UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| HAROLD WARREN, | ) |
|               Plaintiff, | ) ) ) |
|               v. | )   No. 1:24-cv-01606-SEB-TAB ) |
| CENTURION OF INDIANA, LLC, JOHN MERSHON, JOHN NWANNUNU, JOHN HEFLIN, LISA HAMBLIN, SINIKWEYINKOSI MABANDALA, CHRISTINA NUDI, | ) ) ) ) ) ) ) ) |
|               Defendants. | ) |

**ORDER DENYING DEFENDANTS HEFLIN, MABANDALA, AND NWANNUNU'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Harold Warren filed this action under 42 U.S.C. § 1983 on September 16, 2024, while he was incarcerated at Pendleton Correctional Facility ("Pendleton"). Mr. Warren alleges that Defendants violated his Eighth Amendment rights by denying and delaying medical treatment for his shoulder injury. Dkt. 2. Three Defendants—Dr. John Nwannunu, John Heflin, and Nurse Practitioner Sinikweyinkosi Mabandla ("NP Mabandla")[1]—move for summary judgment on the grounds that Mr. Warren failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act ("PLRA") before filing this lawsuit. For the reasons explained below, the Defendants' motion for summary judgment, dkt. [40], is **DENIED.** In addition, the Court **notifies** Defendants of its intent to grant summary judgment for Plaintiff on the exhaustion issue.

---

[1] Defendants have noted that the spelling of the defendant identified as "Sinikweyinkosi Mabandala" is "Sinikweyinkosi Mabandla." The **clerk is directed** to update the docket to reflect that the Defendant's name is properly spelled as "Sinikweyinkosi Mabandla."

1

## I.  Summary Judgment Standard

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party moving for summary judgment must identify the basis for its motion and cite the record evidence that demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.  Factual Background

At all times relevant to the claims in this suit, Mr. Warren was incarcerated at Pendleton, a prison maintained by the Indiana Department of Correction ("IDOC").

### A. Offender Grievance Process

The IDOC has a standardized offender grievance process, which was in place during the time Mr. Warren alleges his rights were violated. Dkt. 43-1, ¶ 6 (Affidavit of Laura Bodkin). During the relevant period, the grievance process consisted of three steps:

> (1) "First, an offender is encouraged to attempt to resolve the grievance informally through officials at the facility. If the offender is unable to resolve the grievance informally, the offender must send the grievance within 10 business days directly to the grievance specialist." *Id.*, ¶ 7.
>
> (2) "If the formal grievance is not resolved in a manner that satisfies the offender, he may submit a request for appeal (Level I) within five business days." *Id.*
>
> (3) "If the offender is not satisfied with the Level 1 appeal response, he may then request within five business days, that the appeal be sent to Central Office to the Department Offender Grievance Manager for a Level II Appeal, which is the final appeal level." *Id.*

Importantly, "[s]uccessful exhaustion of the grievance procedure by an offender includes timely pursuing each step or level of the informal and formal process. An offender must also use the proper grievance forms in order to exhaust successfully and must file timely each grievance within the timeframe outlined by the administrative procedures of the IDOC." *Id.*

### B. Mr. Warren's Participation in the Grievance Process

IDOC records show that Mr. Warren submitted twenty offender grievances between June of 2021 and July of 2024. Dkt. 43-2 (History of Grievances). Defendants did not designate or attach any of the grievances to support their motion in support of summary judgment. Mr. Warren's response in opposition to the motion for summary judgment designated twelve grievances that he filed before beginning this lawsuit.

- Grievance number 24-193182, from August 16, 2024, accuses NP Mabandla of falsifying medical records, which claimed that she discussed diabetes, hypertension, and hyperlipidemia with Mr. Warren. Dkt. 47-1 at 20.[2] Grievance specialist Laura Bodkin responded in June of 2025 and stated: "Your grievance filed in 2024 did not receive a response in the timeframes allotted . . . You may treat this as a denial of your grievance at all three levels of the grievance process." *Id.* at 19.

- Grievance number 24-167428, from September 5, 2023, claims that Mr. Warren did not receive de-briefings after his work as a suicide companion. *Id.* at 30.

- Grievance number 23-158654, from May 22, 2023, asks to be treated for his shoulder pain. Mr. Warren states: "On 5-18-23 I submitted a health care request for my shoulder pain. As of today Centurion has not responded to my request. I have submitted healthcare request in the past about my severe shoulder pain and have not been properly diagnosed nor treated for. I believe this is retaliation because of my prior grievances." *Id.* at 36. Mr. Warren filed an appeal on June 21, 2023 after he did not receive a response. *Id.* at 39. Upon receiving the Level II response on September 26, 2023, Mr. Warren appealed to the IDOC. *Id.* at 44.

- Grievance numbers 23-158626 and 23-159767, submitted on June 19, 2023 and August 14, 2023, complain about Centurion and IDOC employees using hard cuffs when transporting Mr. Warren to the hospital, in turn, exacerbating his should injury. *Id.* at 46; 64. Mr. Warren submitted Level II and Level III appeals for both. *Id.* at 46–52; 66–69.

- Grievance number 24-167422, from July 24, 2023, states, ". . . as of today I am not being seen by Centurion Health Services[.] This has been an ongoing issue as far as me putting health care for numerous serious medical issues such as my diabetes, hernia pain,

---

[2] The Court cites to the page numbers of the document.

4

shoulder[] pain, and long term damages due [to] my lungs from Legionnaires disease. Centurion/Dr. Mershon refuses to respond to my health cares and refuses to treat my serious medical conditions." *Id.* at 56. Mr. Warren filed Level II and Level III appeals. The Level II appeal was denied as untimely and the Level III appeal was denied because Mr. Warren had seen a medical provider on July 31, 2023. *Id.* at 60–62.

- Grievance number 24-195738, from August 28, 2023, complains about a nurse practitioner twisting Mr. Warren's arm during an appointment and being rude to him for filing grievances. *Id.* at 71. Mr. Warren requests "to be seen for the pain I'm in both shoulders to include to see if additional damage was done by the NP." *Id.* The grievance specialist responded to the grievance in November of 2024, denying the grievance since Mr. Warren had already received treatment. *Id.* at 73. Mr. Warren filed Level II and Level III appeals. *Id.* at 74–79.

- Grievance number 24-196342, from September 5, 2023, complains about Pendleton's failure to respond to Mr. Warren's previous grievances. *Id.* at 80.

- Grievance number 25-202675, from October 2, 2023, complains about Centurion staff not approving Mr. Warren for a consultation with an orthopedist for his shoulder pain. *Id.* at 85. Grievance specialist Laura Bodkin responded in March of 2025 and stated: "Your grievance filed in 2023 did not receive a response in the timeframes allotted . . . You may treat this as a denial of your grievance at all three levels of the grievance process." *Id.* at 84.

- Grievance number 24-167081, from November 22, 2023, complains about Pendleton's failure to provide Mr. Warren with his medical records. *Id.* at 89.

5

- A grievance on May 3, 2024 complains about Pendleton not responding to Mr. Warren's prior grievances as well as delaying his medical care. *Id.* at 96.

### III. Discussion

The PLRA requires incarcerated people to exhaust available administrative remedies before suing over prison conditions. 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). "To exhaust administrative remedies, a prisoner must comply strictly with the prison's administrative rules by filing grievances and appeals as the rules dictate." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (*citing Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)). A "prisoner must submit inmate complaints and appeals 'in the place, and at the time, the prison's administrative rules require.'" *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). Thus, "to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 39, 397 (7th Cir. 2004). "Because exhaustion is an affirmative defense, the defendants must establish that an administrative remedy was available and that [the plaintiff] failed to pursue it." *Thomas v. Reese*, 787 F.3d 845, 847 (7th Cir. 2015)

Here, the moving Defendants argue that Mr. Warren did not exhaust his remedies because he did not name them or grieve the specific facts alleged in his complaint. Dkt. 41 at 2–5. Importantly, Defendants do *not* argue that Mr. Warren did not appeal his grievances on time. In both briefs, Defendants vaguely claim that Mr. Warren failed to comply with procedure "as it relates to the facts relevant to this lawsuit." Dkt. 41 at 4; dkt. 49 at 11. They do not elaborate how or why Mr. Warren has failed to comply, however, other than to state that the content of his

Case 1:24-cv-01606-SEB-TAB   Document 52   Filed 11/14/25   Page 7 of 11 PageID #: 482

grievances does not address the issues in this lawsuit. Indeed, they do not even attach records of the allegedly noncompliant grievances. Mr. Warren's response goes into detail about how any failure to comply with time requirements was due to systemic issues with Pendleton's grievance process, making it unavailable. Dkt. 46 at 5–6. Defendants' reply does not address Mr. Warren's argument that the grievance process was unavailable to him.

The Court does not address the issue of timeliness because Defendants have waived this argument. *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority."); *Vaughn v. King*, 167 F.3d 347, 354 (7th Cir. 1999) ("It is not the responsibility of this court to make arguments for the parties."). Therefore, the Court addresses the issue that the Defendant's raised: whether Mr. Warren failed to exhaust his administrative remedies because the content of his grievances did not name the three moving Defendants or describe the specific factual allegations against them in his complaint.

## I. Content of Grievances

In the context of the PLRA's exhaustion requirement, the Supreme Court has explained that "the primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Jones v. Bock,* 549 U.S. 199, 219 (2007) (quoting *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)). Thus, "notice to an individual that she might be sued "has not been thought to be one of the leading purposes of the exhaustion requirement." *Id.* Instead, "[t]he level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Id.* at 218.

7

Defendants have not pointed to a particular IDOC policy requiring prisoners to name the people responsible for their grievances. In fact, they have not designated or attached the relevant policy as evidence supporting their motion for summary judgment. Other district courts have not found that the IDOC requires plaintiffs to name names. *See, e.g.*, *Mason v. Corizon, Inc.*, 2018 WL 1210949, at *3 (S.D. Ind. Mar. 8, 2018) (explaining that the IDOC grievance policy does not require an inmate to name a specific individual). Furthermore, the Seventh Circuit also has not required prisoners to name specific defendants in their grievances to comply with the PLRA's exhaustion requirement. *Dye v. Kingston,* 130 F. App'x 52, 55 (7th Cir. 2005) ("We and the majority of the circuits have never endorsed … the defendants' invitation to engraft onto § 1997e(a) a requirement that defendants to a civil suit be first named in an inmate's prison grievance."). Instead, independent of the requirements of the jail or prison regarding the content of the grievance, the Seventh Circuit requires that the grievance give the prison a fair opportunity to address his complaint prior to filing suit. *King v. Dart*, 63 F.4th 602 (7th Cir. 2023). Importantly, a grievant "need not lay out the facts, articulate legal theories, or demand particular relief" so long as the grievance objects "intelligibly to some asserted shortcoming." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002).

Here, without naming the moving Defendants, the contents of Mr. Warren's grievances give Pendleton and the IDOC sufficient notice that there is some "shortcoming" regarding treatment for his shoulder. As seen above, Mr. Warren's May 22, 2023 grievance asks to be treated for his shoulder pain, stating "I submitted a health care request for my shoulder pain. As of today Centurion has not responded to my request. I have submitted healthcare request in the past about my severe shoulder pain and have not been properly diagnosed nor treated for." Dkt. 47-1 at 36. Mr. Warren's July 24, 2023 grievance also complains that "Centurion Health Services" has ignored

8

various health issues, including "shoulder[] pain." *Id.* at 56. Mr. Warren's August 28, 2023 grievance requests "to be seen for the pain I'm in both shoulders to include to see if additional damage was done by the NP." *Id.* at 71. Mr. Warren's October 2, 2023 grievance complains about Centurion staff not approving him for a consultation with an orthopedist for his shoulder pain. *Id.* at 85. Last, Mr. Warren's May 3, 2024 grievance complains about Pendleton not responding to his prior grievances as well as delaying his medical care. *Id.* at 96.

Even though these grievances do not give personal notice to the moving Defendants by naming them, they sufficiently put Pendleton and the IDOC on notice that Mr. Warren had a specific problem regarding Centurion medical staff's decisions to deny and delay treatment for his shoulder. Thus, absent specific policy requirements requiring more detail, these grievances fulfill the requirements of the PLRA of putting prison officials on notice. *See Schillinger v. Kiley,* 954 F.3d 990, 995 (7th Cir. 2020) ("[A]n inmate's complaint will suffice for exhaustion purposes if it provides notice to the prison of the nature of the wrong for which redress is sought."); *Maddox v. Love*, 655 F.3d 709, 721–22 (7th Cir. 2011) ("[Maddox] complained about an administrative decision ... and it belies reason to suggest that prison administrators ... were unaware of who was responsible for that decision."); *Jones*, 549 U.S. 199, 217 (2007) ("nothing in the statute imposes a 'name all defendants' requirement").

The moving Defendants also contend that Mr. Warren did not grieve the specific allegations in his complaint against each Defendant. Defendants have artificially narrowed the claims against them in this lawsuit to solely pertain to the specific factual allegations in the complaint. The lawsuit is not so narrow. First, in addition to the specific allegations against the three moving Defendants, the complaint alleges that "Centurion," "Centurion staff," and Defendants generally denied and delayed care for Mr. Warren's shoulder. *See* dkt. 2. Because the three moving Defendants are

9

Centurion employees, the Complaint can be said to make allegations against them in a general capacity. Second, in addition to other more general allegations, the complaint claims that Dr. Nwannunu, Dr. Heflin, and NP Mabandla "were deliberate[ly] indifferent to plaintiff[']s serious medical needs when interalia, they refused, delayed, and denied adequate medical treatment from plaintiff when he submitted multiple HCRF's starting early 2023 through 2024, sent request forms, and had verbal conversations with all of the defendants about Plaintiff suffering from pain in his shoulders." *Id.* at 14–15. The plain language of the complaint shows that Mr. Warren sued the moving Defendants for displaying deliberate indifference towards his should injury, which is what the above-seen grievances complain about. Third, Defendants do not cite any policy or legal authority showing that inmates must grieve every factual allegation in a complaint. As seen above, absent particular rules or regulations "prescribing the contents of a grievance or the necessary degree of factual particularity" . . . "a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *Strong*, 297 F.3d at 650. "As in a notice-pleading system, the grievant need not lay out the facts, articulate legal theories, or demand particular relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Id.*

      In sum, it is undisputed that Mr. Warren filed grievances about Centurion employees' delay and indifference towards treating his shoulder before filing this lawsuit. As seen above, these grievances suffice to put Pendleton and the IDOC on notice of the Eighth Amendment deliberate indifference claims in Mr. Warren's lawsuit. Absent a policy or regulation showing that Mr. Warren's grievances did not meet the IDOC's specificity requirements, Defendants have not met their burden to show that Mr. Warren failed to exhaust his available administrative remedies.

## IV. Conclusion

For the reasons stated above, Defendants' motion for summary judgment, dkt. [40], is **DENIED**.

Further, under Rule 56(f)(1), the court gives Defendants notice of its intent to grant summary judgment in Plaintiff's favor on the issue of exhaustion. Defendant has **through December 15, 2025,** to show cause why summary judgment should not be granted. Alternatively, Defendants may withdraw their affirmative defense by this date.

The **clerk is directed** to update the docket to reflect that the Defendant's name is properly spelled as "Sinikweyinkosi Mabandla."

**IT IS SO ORDERED.**

Date: 11/14/2025

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

HAROLD WARREN
104516
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

David Douglas Becsey
ZEIGLER COHEN & KOCH
dbecsey@zcklaw.com

Roger K. Kanne
ZEIGLER COHEN & KOCH
rkanne@zcklaw.com